<u>NOT FOR PUBLICATION</u>                    [Docket Nos. 64 & 65]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____ :
                                 :
TYRONE J. FLOYD,                 :
                                 :
            Plaintiff,           :    Civil No. 05-3949 (RMB)
                                 :
      v.                         :    **OPINION**
                                 :
THE STATE OF NEW JERSEY          :
CASINO COMMISSION et al.,        :
                                 :
            Defendants.          :
_____ :


APPEARANCES:

Tyrone J. Floyd
221 West Park Avenue
Pleasantville, New Jersey 08232
(609) 271-5597
        <u>Pro</u> <u>Se</u> Plaintiff

Teresa M. Nagengast, Esquire
New Jersey Casino Control Commission
Office of the General Counsel - Licensing
Tennessee Avenue and Boardwalk
Atlantic City, New Jersey 08401
609-441-3422
        Attorneys for Defendant The State of New Jersey
        Casino Control Commission

Karen A. Confoy, Esquire
Erica Susan Helms, Esquire
Sterns & Weinroth, PC
50 West State Street, Suite 1400
PO BOX 1298
Trenton, New Jersey 08607-1298
(609) 392-2100
        Attorneys for Defendant Sands Hotel & Casino, Inc.

D. Andrew Bertorelli, Jr., Esquire
Spector Gadon & Rosen
1000 Lenola Road
P.O. Box 1001
Moorestown, New Jersey 08057
856-778-8100
          Attorney for Defendant GB Holdings, Inc.

**BUMB,** United States District Judge:

          This matter comes before the Court upon (1) a motion to dismiss by Defendant, The State of New Jersey Casino Control Commission (the "Commission") and (2) a motion to dismiss by Defendant, Sands Hotel and Casino, Inc. (the "Sands"); (collectively the "Defendants").[1]  For the reasons set forth below, the motion of the Commission will be granted in part and denied in part and the motion by the Sands is granted in part and denied in part.

          In addition, the Court notes that Plaintiff filed an impermissible sur-reply without the permission of the Court [Docket No. 77].  See Local Civil Rule 7.1(d)(6) ("No sur-replies are permitted without the permission of the Judge or Magistrate Judge to whom the case is assigned.").  As such, this Court will disregard Plaintiff's impermissible submission.  See Niyogi v. Intersil Corp., 2006 U.S. Dist. LEXIS 27422 at * 8 (D.N.J. Apr. 26, 2006) (striking impermissible sur-reply).

---

          [1]  The proper name is ACE Gaming, LLC, d/b/a Sands Hotel Casino.  Apparently, GB Holdings, Inc., the remaining Defendant, filed a suggestion of bankruptcy post-complaint.  See Defendant Sands' Brief, at 2 n. 1.

2

<u>Procedural History</u>:

       The procedural history of this case to date has been a tortured one.  On August 9, 2006, the Honorable Joel B. Rosen, United States Magistrate Judge, granted Plaintiff leave to file an Amended Complaint.  But each time he filed or attempted to file the amended pleading, Defendants objected because the pleading was not in the form approved by the Court.  On November 15, 2006, the Court conducted a conference with the Plaintiff, Tyrone J. Floyd, appearing <u>pro</u> <u>se</u>, and counsel for the Defendants in an attempt to resolve what claims Plaintiff was alleging.  As a result of the November 15, 2006, conference, the Court permitted Plaintiff to file an Amended Complaint pursuant to the terms set forth in that conference, which he did on November 27, 2006.

       The allegations set forth in the Amended Complaint are numerous and difficult to decipher.  Nonetheless, this Court has attempted to construe the Amended Complaint as best it can. Plaintiff's allegations stem from his employment by the Sands as a painter.  As Plaintiff describes in the "General Allegation" section of his Amended Complaint, he began employment as a painter in the "convention services department" at the Sands on June 5, 1989.  On July 12, 1993, the Sands transferred him to the "facilities department where it was compulsory for all painters

to hold a 2-1 gaming license and a casino employees registration license."  Amended Compl. at 4.

Plaintiff alleges that, after January 9, 2002, he was no longer required to hold the 2-1 gaming license "pursuant to the directive known as the job compendium that was revised by the Sands and submitted [to the Commission] on December 27th, 2001." Id., see also Document 1 attached to Plaintiff's Complaint.  This directive, allegedly approved by the Commission, required a painter to hold only a casino service employee registration.  Id.

Plaintiff alleges that he "was terminated from place of employment approximately 1½ years after state laws changed [presumably referring to the above directive by the Commission]." On July 30, 2003, a notice for termination was issued to Plaintiff stating "both licenses required by employment are revoked and you are prohibited from working in any capacity in any casino facility for five years." Id.  Plaintiff alleges that in terminating him Defendants violated several laws.  The caption of the Amended Complaint reads as follows:

> FIRST AMEND ORIGINAL COMPLAINT
> AND
> DEMAND FOR TRIAL JURY
> Amended Complaint First, Fifth, Ninth and
> Fourth[2] Amendment of the United States
>
> 42 U.S.C. 12101, 12202, 12132 Americans
> with Disabilities Act (A.D.A.), Title I, II, VII.

---

[2]  Plaintiff cites to the Fourteenth Amendment in the body of the Amended Complaint.

                    42 U.S.C. 1981
                    3 Counts of 42 U.S.C. 1985 Conspiracy to
                    interfere with civil rights

                    6 Counts of 42 U.S.C. 1986 Failure to Stop
                    and Correct the Wrong

                    6 Counts of 42. U.S.C. 1983 Civil action for
                    Deprivation of Rights

                    U.C.C. Title 2 Section 507 Forced Breach of
                    Contractual Agreements

                    38 U.S.C. 3802 Administrative Remedies For
                    False Claims and Statements

Plaintiff seeks an award of "two million three hundred thousand

dollars ($2,300,000)" for his alleged injuries.

        Defendants move to dismiss the Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants

allege that Plaintiff presents no facts which would support his

claims.  Defendant Commission also argues that all claims against

it must be dismissed pursuant to the Eleventh Amendment grant of

immunity.


Motion to Dismiss Standard:

        A Rule 12 (b)(6) motion to dismiss for failure to state

a claim upon which relief may be granted must be denied unless it

appears that no relief can be granted under any set of facts that

could be proved consistent with Plaintiff's allegations.[3]  Hishon

---

        [3]   In their moving papers, Defendants attach many documents
that go beyond the pleadings in this case.  This Court will only
address the documents that are referred to in Plaintiff's Amended

v. King & Spalding, 467 U.S. 69, 73 (1984).  A district court is
"required to accept as true all allegations in the complaint and
all reasonable inferences that can be drawn from them after
construing them in the light most favorable to the non-movant."
Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261
(3d Cir. 1994).

Generally speaking, "[p]ro se submissions, 'however
inartfully pleaded,' must be held to 'less stringent standards
than formal pleadings drafted by lawyers' and can only be
dismissed for failure to state a claim if it appears 'beyond
doubt that the plaintiff can prove no set of facts in support of
his claim which would entitle him to relief.'" Then v. I.N.S., 58
F. Supp. 2d 422, 429 (D.N.J. 1999) (quoting Estelle v. Gamble,
429 U.S. 97, 106 (1976)).

However, a complaint should be dismissed if, accepting
all plaintiff's allegations and the reasonable inferences to be

_____

Complaint or may be fairly characterized as judicially-noticed
facts.  See Jordan v. Fox Rothschild, O'Brien & Frankel, 20 F.3d
1240, 1261 (3d Cir. 1994) (stating that generally, on a motion to
dismiss, a court can only look to the facts alleged in the
complaint and its attachments).  Were this Court to rely upon
these documents, it would convert the motion to dismiss into a
summary judgment motion.  The Court may consider a "document
integral or explicitly relied upon in the complaint ... without
converting the motion to dismiss into one for summary judgment."
In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426
(3d Cir. 1997).  Because there has been little or no discovery,
this Court will address only the sufficiency of the pleadings at
this stage of the case and rely only on documents that are
integral to or referred to in the Complaint.

drawn therefrom, no relief could be granted under any set of facts to be proved.  Watts v. IRS, 925 F. Supp. 271, 275 (D.N.J. 1996).  There must be an actual, actionable claim underlying the Complaint's allegations.  Hishon, 467 U.S. at 73.

Legal Analysis:

      I.   The Casino Control Commission's Motion

      The Court will first address the Commission's alternative argument that the allegations in the Amended Complaint against it are barred by the Eleventh Amendment.[4]  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity extends to suits where "the state is the real, substantial party in interest."  Pennhurst, 465 U.S. at 101-102,;

---

     [4]   The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

<u>Edelman</u>, 415 U.S. at 663.  Thus, the Commission is entitled to

such immunity if the relationship between the Commission and the

State of New Jersey is such that the Commission is entitled to be

shielded against federal suit in the same manner as the State.

In assessing whether an entity is entitled to share in

the Eleventh Amendment immunity of a state, the Third Circuit

considers three factors: (1) whether payment for any judgment

would come from the state; (2) the status of the entity under

state law; and (3) what degree of autonomy the entity has.  <u>See</u>

<u>Fitchik v. New Jersey Transit Rail Operations, Inc.</u>, 873 F.2d

655, 659 (3d Cir. 1989).  In <u>Rudolph v. Adamar of New Jersey,</u>

<u>Inc.</u>, 153 F. Supp. 2d 528 (D.N.J. 2001), the Court conducted an

extensive and persuasive analysis of the <u>Fitchik</u> factors as they

related to the State of New Jersey Casino Control Commission, the

very same Defendant in this case.  The <u>Rudolph</u> court concluded

that the Commission enjoyed Eleventh Amendment immunity because

it was an alter ego of the State of New Jersey.  <u>Rudolph</u>, 153 F.

Supp. at 551.  ("I conclude that the New Jersey Casino Control

Commission is an alter ego of the State of New Jersey and is

therefore entitled to Eleventh Amendment immunity.").  Plaintiff

has presented no evidence to counter that holding, but merely

argues that the Commission is a "state actor."  <u>See</u> Pl.'s

Response at 3.  Thus, it seems Plaintiff himself acknowledges

that the Commission is an arm of the state.  Accordingly, the

Court will grant Defendant Commission's motion to dismiss certain claims against it pursuant to the Eleventh Amendment.

Case law dictates that the Commission, as an established alter ego of the State, is entitled to Eleventh Amendment immunity on Plaintiff's claims pursuant to 28 U.S.C. §§ 1983 (thus foreclosing Plaintiff's claims for constitutional violations)[5], 1981,[6] 1985,[7] 1986.[8]  Moreover, with regard to Plaintiff's claim brought pursuant to 31 U.S.C. 3802,[9] Plaintiff fails to state a claim upon which relief may be granted.  31 U.S.C. § 3802 is a section of the Program Fraud Civil Remedies Act and Plaintiff's claims are wholly unrelated to that statutory section.  Plaintiff also appears to assert a claim pursuant to

---

[5] See e.g., Hicks v. N.J. State Parole Bd., 2007 U.S. Dist. LEXIS 39932 at *7 (D.N.J. May 31, 2007)(Section 1983 does not override a state's Eleventh Amendment immunity." (citing Quern v. Jordan, 440 U.S. 332 (1979)).

[6] Collins v. Sload, 212 Fed. Appx. 136, 140 (3d Cir. Jan. 8, 2007)("The District Court did not err in dismissing Collins' claims for damages under § 1981 against defendants in their official capacities on the basis of Eleventh Amendment immunity.")

[7] Robus v. Pa. Dep't of Corr., 2006 U.S. Dist. LEXIS 49943 at *9 (E.D. Pa. Jul. 20, 2006) (granting Department of Corrections' motion to dismiss on Eleventh Amendment grounds).

[8] Udujih v. City of Phila., 2007 U.S. Dist. LEXIS 35063 at* 14 (E.D. Pa. May 14, 2007)("because an action under 42 U.S.C. § 1986 requires the existence of a conspiracy under § 1985, my finding that no conspiracy existed also disposes of [plaintiff's]§ 1986 claim.")

[9] While Plaintiff refers to 38 U.S.C. 3802, that section deals with Veterans Benefits and is totally inapplicable here.

N.J. Stat. Ann. § 12A:2-507, for "Forced Breach of Contractual Agreements" as stated on the cover page of his Amended Complaint. Other than the cover page, however, the Amended Complaint is devoid of any allegations regarding the Commission's involvement on a "forced contractual breach" or related to the tender of goods - which the UCC section cited relates to - thus, he fails to state a claim.

Finally, Plaintiff can present no Title VII claims against the Commission because the Commission is not his employer.  42 U.S.C.A. § 2000e-16(a); see Gayden v. HQ Fort Dix, 2006 U.S. Dist. LEXIS 55349  at * 16 (D.N.J. Aug. 9, 2006) (stating that "plaintiff's lack of a required employment relationship deprives her of standing to pursue a Title VII claim.").  Therefore, the Commission's motion will be granted with regard to the aforementioned claims.

The Commission's motion to dismiss regarding Plaintiff's Americans with Disabilities Act ("ADA") allegations, however, fails for several reasons.  Plaintiff appears to assert these claims under ADA § 202, which states:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. 12132.

First, the Court notes that Defendants cite to <u>Doe v.</u>
<u>Division of Youth and Family Services</u>, 148 F. Supp. 2d 462
(D.N.J. 2001), for the proposition that "claims brought against a
state pursuant to Title II of the ADA, under which 42 U.S.C.
12132 falls, are not permissible as Congress exceeded its
authority." (Commission's Br. at 21-22).  This citation is
totally disingenuous in light of <u>Doe</u>'s clear limitation to the
facts at issue in that case.  <u>See Doe</u>, 148 F. Supp. 2d at 487
("it must be noted that the Court is presented here with a rather
narrow claim – that the plaintiffs were discriminated against by
state officials who were implementing DYFS policies directed
against HIV-positive pregnant women. . . . the Court is
constrained to formulate constitutional rules only to the extent
necessary to resolve the issues and factual scenario before
it.").  Thus, <u>Doe</u> lends no support to the issues at hand as the
factual scenario is different.

Moreover, the Commission's citation to <u>Doe</u> for the
broad proposition that immunity was not abrogated under Title II
is particularly troubling in light of <u>United States v. Georgia</u>,
546 U.S. 151 (2006), in which the Supreme Court found that
"insofar as Title II creates a private cause of action for
damages against the States for conduct that actually violated the
Fourteenth Amendment, Title II validly abrogates state sovereign
immunity." <u>Id.</u> at 159.  The Commission makes no mention of the

11

Supreme Court's finding.

Additionally, while the Commission did not have the guidance available from <u>Bowers v. National Collegiate Athletic Assoc.</u>, 475 F.3d 524 (2007), <u>reh'q granted</u> 2007 U.S. App. LEXIS 5447 (3d Cir. Mar. 8, 2007), at the time it filed its initial brief (though it was available by the time the Commission filed its reply), the Circuit, in <u>Bowers</u>, engaged in an in-depth constitutional analysis based on the facts specific to the issues in that case in order to determine whether immunity has been abrogated for purposes of Title II even where the conduct complained of was not violative of the Fourteenth Amendment. <u>Bowers</u>, 475 F.3d at 554-555 (determining that immunity was abrogated even where the misconduct itself did not violate the Fourteenth Amendment). Overall, the Commission has not come close to performing the requisite analysis and, thus, the Court is in no position to make the immunity determination as to Plaintiff's ADA claims at this juncture. <u>See e.g.</u>, <u>Zied-Campbell v. Richman</u>, 2007 U.S. Dist. LEXIS 23469 (M.D. Pa. Mar. 30, 2007)(engaging in constitutional analysis). Therefore, the Court will examine whether Plaintiff's ADA allegations state a claim upon which relief may be granted.

"To succeed on a claim under Title II, [a plaintiff] must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied

12

the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." Bowers, 475 F.3d at 553 n.32 (citations omitted). Pursuant to the Amended Complaint, Plaintiff alleges, in relevant part, that he is a qualified individual when he states: "this forfeiture [of the Commission's chance to make an informed decision regarding Plaintiff's qualifications] negates Defendant CCC's[10] claim that he was not qualified under the ADA." Amended Compl. at 5. He further alleges that "the CCC, in the process of requiring Plaintiff to attend meetings no longer required by State laws, and after numerous attempts by the Plaintiff to make the Sands and the CCC aware of his mental disability, continued to move forward without providing reasonable accommodations in the work place or for these meetings." Amended Compl. at 5. Thus he adequately alleges that he is disabled and that he was subject to discrimination because of his disability.[11] See Amended Compl. at 5.

---

[10] Plaintiff uses "CCC" to refer to the Commission.

[11] The Court notes that 28 C.F.R. § 35.130(b)(7), states: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

Furthermore, the Commission admits that depression can be a covered disability and that Plaintiff advised the Commission of his depression. (Commission's Br. at 19).  In spite of this, the Commission argues that Plaintiff's claim fails because he has not provided evidence that his disability limited one of his major life activities or that he was discriminated against because of his disability.  Moreover, the Commission insists that it did accommodate Plaintiff.  The instant motion, however, is a motion to dismiss, <u>not</u> one for summary judgment.  At this stage, Plaintiff must only present allegations sufficient to state a claim - he is under <u>no</u> obligation to provide evidence to prove his claim: "Dismissal of a complaint pursuant to Rule 12(b)(6) is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  <u>Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.</u>, 450 F. Supp. 2d 467, 484 (D.N.J. 2006) (<u>quoting</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  Moreover, the allegations contained in the complaint will be accepted as true and Plaintiff is to be "given the benefit of every favorable inference that can be drawn from those allegations." <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1405 (3d Cir. 1991).  As such, the Court will not dismiss Plaintiff's ADA complaints on 12(b)(6) grounds because it cannot, at this juncture, state that no relief could be granted under the set of facts as alleged by Plaintiff.

14

Therefore, the Commission's motion will be denied on this point.

II.   <u>The Sands Hotel & Casino, Inc.'s Motion</u>

The Sands contends that each of Plaintiff's claims against it fail to state a claim.  For ease, the Court will address the claims in the order Plaintiff labels them on the face of his Amended Complaint.

a.   42 U.S.C. §§ 12101, 12202, 12132 [12] (American With Disabilities Act), Title I, II, III[13]

---

[12]   Section 12132 relates to public entities, as discussed above, and is therefore inapplicable to the Sands.  Although the Amended Complaint states §12101 (which lists the Congressional findings and purposes behind the Act) and § 12202 (which deals with State immunity), presumably Plaintiff meant § 12112 which states:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

[13]   Although the Amended Complaint states "VII," presumably Plaintiff meant Titles I through III of the Americans with Disabilities Act. Title I relates to employment; Title II relates to state and local governments; and Title III relates to private entities offering commercial facilities and providing places of public accommodation.  Plaintiff may intend to cite to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e <u>et</u> <u>seq</u>.  At page 5 of his Amended Complaint, he contends to Title VII in all relevant aspects of employment where "nearly identical" painters were treated more favorably."  Amended Compl. at 5.  This conclusory allegation fails to state a claim, even under Title VII.  In order to successfully state a claim under Title VII, a Plaintiff must first raise all claims with the EEOC before bringing an action in federal court.  Here, Plaintiff does not allege that he has made the requisite filings with the EEOC. Moreover, in order to state a claim for disparate treatment,a plaintiff must allege "(1) the [he] belongs to a protected class; (2) [he] was qualified for the position; (3) [he] was subject to

15

The Amended Complaint alleges a claim of discrimination under the Americans with Disabilities Act (the "ADA"). The Amended Complaint alleges, in relevant part:

> The Sands and the CCC, in the process of requiring Plaintiff to attend meetings no longer required by State laws, and after numerous attempts by the Plaintiff to make the Sands and the CCC aware of his mental disability, continued to move forward without providing reasonable accommodations in the work place or for these meetings. Nor did the Defendants offer consultation to Plaintiff pursuant to 42 U.S.C. 12101, 12132 (1) thereby forfeiting their ability to make an informed decision as to Plaintiff's qualifications for the availability of services or participation in programs and activities to which he may have been entitled pursuant to 42 U.S.C. 12101(1). Plaintiff asserts that this forfeiture negates Defendant CCC's claim that he was not qualified under ADA. Plaintiff further asserts the Defendant CCC did not comply after being given notice by Plaintiff regarding his disabilities. CCC did not comply with ADA requirements pursuant to N.J.S.A. 19:40-6.3. The Sands had knowledge of Plaintiff's disabilities and did not offer accommodations, thereby depriving Plaintiff pursuant to 42 U.S.C. 12132.

Amended Compl. at 5.

In order for an employee to state a claim of discrimination under the ADA, he must establish (1) that he is a

---

an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). As Plaintiff has failed to make the requisite allegations, he has failed to state a claim upon which relief may be granted.

disabled person within the meaning of the ADA; (2) he is a qualified individual with a disability and that he can perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment decision as a result of the disability.  Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 568 (3d Cir. 2002).

A liberal reading of the Complaint - - without putting too much emphasis on the particular subsection of the statute alleged to have been violated[14] - - reveals that Plaintiff is alleging the following:  that the Sands was aware of his disability, that is, his depression, but failed to provide reasonable accommodations in the workplace or for the meetings that occurred, apparently in connection with the renewal of his 2-1 gaming license and/or casino employees registration license, a prerequisite to his job, in violation of the ADA.  See Amended Compl. at 4-5.

Certainly, a mental disability, such as depression, may constitute a disability within the ADA.  Wilson v. Lemington Home for the Aged, 159 F. Supp. 2d 186, 198 (W.D. Pa. 2001) ("[d]epression may qualify as impairments for the purpose of the ADA."); Olson v. General Elec. Astrospace, 966 F.Supp. 312, 316 (D.N.J. 1997)(same).  Moreover, discrimination under the ADA

---

[14] The Court notes that the Complaint need only plead facts sufficient to "suggest" a basis for liability.  See Spruill v. Gillis, 372 F.3d 236 n. 12 (3d Cir. 2004).

encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.  The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does 'not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].' 42 U.S.C. § 12112(b)(5)(A).  <u>See Taylor v. Phoenixville School Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999).

Moreover, an employer, like the Sands, may have a legal obligation to offer reasonable accommodations to address an employee's disability.  The courts in this Circuit have applied a four part test to failure to accommodate claims - it asks:

> 1) was plaintiff disabled and did the employer know it;
> 2) did the plaintiff request accommodations or assistance;
> 3) did the employer make a good faith effort to assist; and
> 4) could plaintiff have been reasonably accommodated.

<u>See Armstrong v. Burdette Tomlin Memorial Hospital</u>, 438 F.3d 240, 246 (3d Cir. 2006)(<u>citing</u> <u>Taylor</u>, 184 F.3d at 317-20).  Here, Plaintiff alleges that he was disabled as a result of his depression; that he was nonetheless able to perform his job; and, that he suffered an adverse employment decision, i.e., termination because of revocation of his license which allegedly

18

occurred because he could not fully participate in the renewal of his license because of his disability.  Moreover, he alleges, that the Sands knew of his disability but failed to accommodate him in the license renewal process.  Such accommodation is contemplated by the ADA.  See 29 C.F.R. 1602.2(o)(2)(ii) ("Reasonable accommodation may include but is not limited to: appropriate adjustment or modifications of examinations, training materials, or policies;. . . and other similar accommodations for individuals with disabilities.").

Additionally, the EEOC regulations provide that when an employee requests an accommodation, an employer is obligated to engage in an interactive process.  Federal regulations state,

> [t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. 1630.2(o)(3).  In certain situations, the employer may be required to initiate the discussions regarding accommodation. See e.g., Bultemeyer v. Ft. Wayne Community Schools, 100 F. 3d 1281, 1283 (7th Cir. 1995)(employer should do what it can to help if appears that a mentally ill employee may need accommodation but does not know how to bring this about).

Thus, because Plaintiff has sufficiently plead the essential elements of a claim pursuant to the ADA, 42 U.S.C. § 12112 et seq., the Sands' motion will be denied on this count.

    b.   42 U.S.C. § 1981

Plaintiff also alleges a violation of 42 U.S.C. § 1981. This Court notes, as a preliminary matter, that it is unsettled in this Circuit whether there is an independent cause of action pursuant to Section 1981. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) (discussing disagreement over whether 1991 amendments to § 1981 abrogate the Supreme Court's decision in Jett v. Dallas Indep. Ach. Dist., 491 U.S. 701 (1989) by creating an implied independent cause of action).  While neither party raises this issue, and it is certainly not clear from Plaintiff's Amended Complaint that he is raising section 1981 as an independent cause of action, this Court is inclined to follow the reasoning of Riley v. Delaware River and Bay Auth., 457 F. Supp. 2d 505, 512 (D. Del. 2006), which finds that a § 1981 claim can proceed even where it was not brought pursuant to § 1983, in light of Cardenas.  But see Young v. Bethlehem Area Vo-Tech School, 2007 U.S. Dist. LEXIS 13531 at * 13-14 (E.D. Pa. Feb. 28, 2007)(finding that a cause of action against an individual capacity defendant must be pursuant to the remedial provisions of § 1983).

Section 1981, which prohibits racial discrimination in the making and enforcement of contracts, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (a).  In his Amended Complaint, Plaintiff alleges a "disparate treatment" type claim.  He argues that "nearly identical" painters were treated more favorably.  Amended Compl. at 5.

With regard to disparate treatment, "pursuant to Section 1981, a plaintiff must demonstrate the following: '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts.'" Alexis v. Int'l Harvester, Inc., 2003 U.S. Dist. LEXIS 15671 at *7-8 (E.D. Pa. 2003) (quoting Pryor v. NCAA, 288 F.3d 548, 569 (3d Cir. 2002) (citations omitted)).  The Sands argues that Plaintiff has failed to allege any fact that they intended "to discriminate on the basis of race."  This Court agrees.  Plaintiff has not alleged any set of facts which would support a cause of action under 42. U.S.C. § 1981.  He has

21

neither alleged that he belongs to a racial minority nor alleged
discrimination in any of the enumerated activities protected by
the statute.  Accordingly, Defendant Sands' motion to dismiss
this claim will be granted.

    c.   <u>42 U.S.C. § 1985 (3 Counts)</u>

    Plaintiff also alleges that the Defendants violated 42
U.S.C. § 1985.  Section 1985 provides, in relevant part:[15]

> **Depriving persons of rights or privileges**.  If two
> or more persons in any State or Territory conspire
> ... for the purpose of depriving either directly
> or indirectly, any person or class of persons of
> the equal protection of the laws, or of equal
> privileges and immunities under the laws; ... the
> party so injured or deprived may have an action
> for the recovery of damages occasioned by such
> injury or deprivation, against any one or more of
> the conspirators.

    The four basic elements of a <u>prima</u> <u>facie</u> case pursuant
to § 1985 are:

> (1) a conspiracy; (2) motivated by racial or class-
> based discriminatory animus; (3) an act in furtherance
> of the conspiracy; and (4) an injury to a person or a
> deprivation of any right or privilege.

<u>Chambers v. Commonwealth of Pennsylvania</u>, 2006 U.S. Dist. LEXIS
93658 at *30 (M.D. Pa. Dec. 28, 2006).  Like the section 1981
claim, this claim fails as well.  Nowhere in the Amended
Complaint does Plaintiff allege that the Defendants were

---

    [15]   Although Plaintiff does not specify which subsection he
believes Defendants violated, the Court assumes it is the third
clause relating to conspiracies.

motivated by a racial or class-based discriminatory animus. Accordingly, the Defendant Sands' motion will be granted and this claim will be dismissed.  See, e.g., Perry v. Gold & Laine, 371 F. Supp. 2d 622, 626 (D.N.J. 2005) (dismissing pro se plaintiff's claim under § 1985 because, other than Plaintiff's conclusory and unsupported allegations that defendants conspired to fix cases, nothing plaintiff alleged implicated section 1985.)

        d.    42 U.S.C. § 1986 (6 Counts of Failure to Stop and Correct the Wrong)

Plaintiff also alleges a claim under 42 U.S.C. § 1986. Section 1986 provides, in relevant part: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured.

Because section 1986 is a derivative statute, there can be no violation without a violation of section 1985.  Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994)("transgressions of § 1986 by definition depend on a preexisting violation of § 1985).  Because this Court has held that Plaintiff has failed to state a claim under 42 U.S.C. § 1985, his claim for relief under section 1986 likewise fails.  Accordingly, the Defendant Sand's motion will be granted as to this claim.

        e.    42 U.S.C. § 1983 (6 Counts)

23

Plaintiff also alleges claims under 42 U.S.C. § 1983. In order to establish such claim, a plaintiff must prove that he "has been deprived of a right secured by the Constitution and the laws of the United States, and that such deprivation of rights was caused by a person acting under color of state law." Stanziale v. County of Monmouth, 884 F. Supp. 140, 143 (D.N.J. 1995)(citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)).  Thus, a private actor, such as the Sands, cannot be found liable under Section 1983.  Here, Plaintiff does not allege that the Sands was a state actor, nor does he set forth any facts to support such allegation.  What he appears to assert is that the Sands "offered false material information in its statements to . . . the National Labor Relations Board and New Jersey Division of Unemployment".  Amended Compl. at 5.  This does not state a claim under section 1983.  Plaintiff does nothing more than state conclusory allegations which are not sufficient to withstand a motion to dismiss.  See e.g., Curtis v. Everette, 489 F. 2d 516, 521 (3d Cir. 1973)("conclusory allegations ... without supporting facts are not sufficient to make out a complaint under 42 U.S.C. § 1983").

Accordingly, Defendant Sands' motion will be granted as to Plaintiff's section 1983 claim.


f. Plaintiff's Remaining Claims

24

Finally, Plaintiff alleges violations of the First[16],
Fifth, Ninth, and Fourth Amendment[17], Title 2 of the Uniform
Commercial Code § 507, and 38 U.S.C. § 3802 (the Program Fraud
Civil Remedies Act).  Plaintiff also appears to assert state
claims for breach of contract, abuse of process, and intentional
infliction of emotional distress.

Even construing the Amended Complaint liberally, as it
must, the Court agrees with the Defendants that the pleading is
devoid of any facts that would support an allegation of any of
the above-referenced constitutional provisions or statutes.
Although the Court has attempted to construe the facts in a
manner that could support such allegations, it has been unable to

---

[16] To the extent Plaintiff is alleging claims for violations
of his First Amendment right to freedom of association
(specifically, for retaliation stemming from his union
activities) the Court notes that this claim fails because the
Sands is not a state actor.  See American Future Sys. v.
Pennsylvania State Univ., 752 F.2d 854 (3d Cir. 1984) (stating
that the First Amendment would not even be implicated if the
defendant were not a "state actor").  See also  Doug Grant v.
Greate Bay Casino Corp., 232 F.3d 173, 189 (3d Cir. 2000)
("[s]tate regulation and the CCC's authorization of casino
activities do not transform the casinos into state actors.").

[17]   Plaintiff may be referring to the Fourteenth Amendment.
The Equal Protection Claim - e.g., other painters treated more
favorably.  See Amended Compl. at 4.  Plaintiff does not allege a
viable claim, however, because the Sands is not a state actor.
See Nat'l Collegiate Ath. Ass'n v. Tarkanian, 488 U.S. 179, 191
(1988)("[a]s a general matter the protections of the Fourteenth
Amendment do not extend to 'private conduct abridging individual
rights.'" (quoting Burton v. Wilmington Parking Authority, 365
U.S. 715, 722 (1961)).

do so.  This Court should not, and will not, attempt to "re-write" the Amended Complaint to allege viable claims under the foregoing constitutional provisions or statutes.[18]  At most, Plaintiff refers to "sweeping legal conclusions in the form of actual allegations." which shall be rejected by a court called upon to rule on a motion to dismiss.  <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 907 n.8 (3d Cir. 1977).


<u>Conclusion</u>

       Accordingly, for the reasons set forth above, the motion by Defendant Commission will be granted in part and denied in part and the motion by Defendant Sands will be granted in part and denied in part.

       An accompanying Order will issue this date.



Dated: June 19, 2007         **s/Renée Marie Bumb**
                                 RENÉE MARIE BUMB
                                 United States District Judge

---

[18]   In the event Plaintiff believes that the Court has not properly construed or understood his claims, he can, of course, seek to inform the Court in a motion for reconsideration filed under Local Rule 7.1(i).  The Court reminds the Plaintiff, however, that bald, conclusory allegations will not be of any assistance to the Court or parties.